**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:25-cv-03134-DDD-STV

EARLIN ORANDE AHINSHA RICHARDS,

    Petitioner,

v.

JOHNNY CHOATE, in his official capacity as warden of the Aurora Contract Detention Facility owned and operated by GEO Group, Inc.;
JAMISON MATUSZEWSKI, in his official capacity as Interim Field Office D Director, Denver, U.S. Immigration & Customs Enforcement;
KRISTI NOEM, in her official capacity as Secretary, U.S. Department of Homeland Security;
TODD M. LYONS, in his official capacity as Acting Director of Immigration & Customs Enforcement (ICE); and
PAMELA BONDI, in her official capacity as Attorney General, U.S. Department of Justice,

    Respondents.

---

**ORDER DENYING MOTION
FOR PRELIMINARY INJUNCTION**

---

    Petitioner Earlin Orande Ahinsha Richards filed a Motion for Temporary Restraining Order, which I construe as a motion for preliminary injunction, directing his immediate release from immigration detention, or in the alternative, an individualized bond hearing before this Court or another neutral adjudicator. Docs. 2, 6. Petitioner has been subject to mandatory detention pursuant to 8 U.S.C. § 1225(b) for approximately nine months. Because the relevant facts are not in dispute, I have determined that a hearing on this Motion is not necessary. Doc. 21. For the following reasons, I deny Petitioner's Motion.

- 1 -

## BACKGROUND[1]

Petitioner is approximately 44 years old. Doc. 1-2 at 2. He is a citizen of St. Vincent and the Grenadines. Doc. 13-1 ¶ 4. On May 4, 1992, he entered the United States legally as a lawful permanent resident. Doc. 1 ¶ 1; Doc. 13-1 ¶ 5. On November 16, 2009, Petitioner was convicted of Possession of Marijuana in violation of Texas Health and Safety Code § 481.121(b)(1). Doc. 13-1 ¶ 6. On March 5, 2025, Petitioner departed the United States. *Id.* ¶ 7. Four days later, he arrived at a port of entry, applying for admission to the United States. *Id.* ¶ 8.

Because of his prior conviction, the Government deemed Petitioner as seeking admission to the United States pursuant to 8 U.S.C. § 1101(a)(13)(C)(v). *Id.* ¶ 8. U.S. Customs and Border Protection issued a Notice to Appear, initiating removal proceedings under 8 U.S.C. § 1229(a), before the Executive Office for Immigration Review. *Id.* ¶ 9. The Notice classified Petitioner as an arriving alien and charged him as inadmissible to the United States under 8 U.S.C. § 1182(a)(2)(A)(i)(II) because of his prior drug conviction. *Id.*

On approximately March 10, 2025, U.S. Customs and Border Protection transferred Petitioner to Immigration and Customs Enforcement for detention pending his removal, detaining him pursuant to 8 U.S.C. § 1225(b). Doc. 1 ¶ 11; Doc. 1-1; Doc. 13-1 ¶¶ 10–11. On March 25, 2025, Petitioner filed an application for cancellation of removal with the Executive Office for Immigration Review. Doc. 13-1 ¶ 12. Two days later, he made his initial appearance in removal proceedings and the

---

[1] In this Order, all pinpoint citations to the record use the blue page number appended by the Court's Electronic Case Filing system at the top of each page, which may differ from a document's internal pagination.

Immigration Judge sustained the removal charge in the Notice to Appear and scheduled Petitioner for an individual hearing on the merits of his application. *Id.* ¶ 13. At the end of Petitioner's May 16, 2025 individual hearing, the Immigration Judge denied his application and ordered him removed to Saint Vincent and the Grenadines. *Id.* ¶ 14; Doc. 1 ¶ 31. Petitioner filed a Notice of Appeal of this decision with the Board of Immigration Appeals on June 12, 2025. Doc. 13-1 ¶ 15. On August 11, 2025, the Board of Immigration Appeals issued a briefing schedule setting September 2, 2025, as the briefing deadline. *Id.* ¶ 16. Petitioner's appeal remains pending, and he remains detained at the Immigration and Customs Enforcement contract detention facility in Aurora, Colorado. Doc. 1 ¶¶ 31–32; Doc. 13-1 ¶¶ 1, 17–18.

## LEGAL STANDARDS

### I. Preliminary Injunction

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019). One may be granted "only when the movant's right to relief is clear and unequivocal." *McDonnell v. City & Cty. of Denver*, 878 F.3d 1247, 1257 (10th Cir. 2018). To succeed on his motion for a preliminary injunction, Petitioner must show: (1) that he is "substantially likely to succeed on the merits"; (2) that he will "suffer irreparable injury" if the injunction is denied; (3) that his "threatened injury" without the injunction outweighs Defendants' under the injunction; and (4) that the injunction is not "adverse to the public interest." *Mrs. Fields*, 941 F.3d at 1232; *accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The third and fourth preliminary-injunction factors "merge" where, as here, the Government is the party opposing the injunction. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The injunction Petitioner seeks, moreover, is of a "disfavored" type—it would mandate

action (rather than prohibiting it) and change the status quo—so he faces a heavier burden and must make a "strong showing" that the first and third factors weigh in his favor. *Mrs. Fields*, 941 F.3d at 1232.

## II. Habeas Corpus

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief may be granted if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts have habeas jurisdiction to hear constitutional challenges brought by noncitizens who are detained pursuant to the federal immigration statutes. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Sierra v. INS*, 258 F.3d 1213, 1217-18 (10th Cir. 2001).

## DISCUSSION

Petitioner argues his continued detention without a bond hearing with a neutral reviewer to assess whether his continued confinement is necessary violates his due process rights. Doc. 2. Respondents counter that Petitioner's detention is lawful because he is a noncitizen subject to mandatory detention while his removal proceedings remain pending and due process does not require a bond hearing before the removal proceedings are final. Doc. 13.

### I. Legal Framework Governing Immigration Detention

While removal proceedings are being adjudicated, a noncitizen may

be detained pursuant to 8 U.S.C. § 1225 or 1226.[2] The former applies to "applicants for admission"—aliens "who arrive[] in the United States"—and the latter applies to aliens who have been physically present in the United States continuously for at least two years.[3] *See* 8 U.S.C. § 1225(a)(1), (b)(1)(A)(iii); *Jennings v. Rodriguez*, 583 U.S. 281, 287-89 (2018); *DHS v. Thuraissigiam*, 591 U.S. 103, 108-09 (2020).

Petitioner asserts the Government is detaining him under Section 1226(c) because he entered the country several years ago and he is entitled to a bond hearing to confirm whether his continued confinement is necessary. Doc. 2 at 4, 7; Doc. 1 ¶ 33. The plain language of Section 1226, however, does not support Petitioner's position. Section 1226(c) mandates detention pending a removal decision of aliens "having committed any offense covered in section 1182(a)(2)." *See* U.S.C. § 1226(c)(1)(A); 8 U.S.C. § 1226(a). Petitioner does not dispute that his prior drug conviction is an offense identified in Section § 1182(a)(2). Doc. 13 at 2-3, 5; *see also* 28 U.S.C. § 1182(a)(2)(i)(II) ("a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or

---

[2] If an order of removal is issued and becomes final, the Government may detain an alien pursuant to 8 U.S.C. § 1231 while it attempts to effectuate the alien's removal, but this detention may not be indefinite. *See* 8 U.S.C. § 1231; 8 C.F.R. § 241.4; *Zadvydas v. Davis*, 533 U.S. 678 (2001). Section 1231 does not yet apply in Petitioner's case because he is not yet subject to a final order of removal. 8 U.S.C. § 1231(a)(1)(B).

[3] Congress defined an "alien" as "any person not a citizen or national of the United States," which thus includes lawful permanent residents. *Othi v. Holder*, 734 F.3d 259, 266 (4th Cir. 2013) (quoting 8 U.S.C. § 1101(a)(3)). It also "defined admission to mean 'the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.'" *Vartelas v. Holder*, 566 U.S. 257, 262 (2012) (quoting 8 U.S.C. § 1101(a)(13)(A)) (holding Illegal Immigration Reform and Immigrant Responsibility Act could not apply retroactively to lawful permanent resident alien who committed felony offense years prior to provision's effective date).

a foreign country relating to a controlled substance . . . .").

Nevertheless, Respondents argue Petitioner is detained under Section 1225(b)(2)(A). Doc. 13. That subsection provides: "if the examining immigration officer determines that" the applicant for admission "is not clearly and beyond a doubt entitled to be admitted, the alien ***shall*** be detained for a proceeding under section 1229a"—a proceeding conducted by "[a]n immigration judge . . . [to] decid[e] the inadmissibility or deportability of an alien." 8 U.S.C. §§ 1225(b)(2)(A) (emphasis added), 1229(a)(1). Respondents contend Petitioner's drug conviction is a basis for finding him inadmissible so he is "is not clearly and beyond a doubt entitled to be admitted" and thus required to be detained for his removal proceeding. Doc. 13 at 5-6. Respondents are correct.

Over a decade ago, the Supreme Court explained that "lawful permanent residents are regarded as seeking admission into the United States if they fall into any of six enumerated categories" under Section 1101(a)(13)(C). *Vartelas*, 566 U.S. at 263; *see also* 8 U.S.C. § 1101(a)(13)(C) ("An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien . . . ."); *see also Othi*, 734 F.3d at 267 (explaining under Section 1101(a)(13)(C), lawful permanent residents "are generally exempt from the statutory classification of all other 'aliens' for purposes of an 'admission' designation" and Congress "limited [this] exemption in specific and clear terms"). Relevant here, the fifth category captures an alien such as Petitioner who "has committed an offense identified in section 1182(a)(2) of this title." 8 U.S.C. § 1101(a)(13)(C)(v). Because Petitioner "fall[s] into" one of the "six enumerated categories" under Section 1101(a)(13)(C), he is "regarded as seeking admission into the United States for purposes of the immigration laws." *Vartelas*, 566 U.S. at 263;

8 U.S.C. § 1101(a)(13)(C); *cf. Hernandez-Duron v. Terry*, No. 12-cv-00966 JB/SMV, 2013 WL 12330037, at *3 (D.N.M. May 7, 2013) ("[S]o long as his conviction stands, he would be considered an arriving alien if he attempted to reenter the United States. *See* 8 U.S.C. § 1101(a)(13)(C)(iii)"), *report and recommendation adopted*, No. CIV 12-0966 JB/SMV, 2013 WL 3227459 (D.N.M. May 31, 2013). He is thus an "alien who is an applicant for admission" under Section 1225(b).

Generally, applicants for admission may be detained under one of two subsections of 8 U.S.C. § 1225(b). "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," as well as "certain other aliens designated by the Attorney General in his discretion." *Jennings*, 583 U.S. at 287. Section 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id.* Nothing in the record supports the former's application to Petitioner. Thus, Petitioner is an alien "seeking admission" under Section 1225(b)(2)(A).

## II. Procedural Due Process

The Fifth Amendment to the United States Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." In immigration detention cases, "the nature of that protection may vary depending upon [immigration] status and circumstance." *Zadvydas*, 533 U.S. at 694. The procedural protections need not equate to those of citizens. *See Demore*, 538 U.S. at 522 ("[T]his Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens.").

"Ordinarily, . . . '[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" *Sierra*,

- 7 -

258 F.3d at 1218 (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)).[4] This does not mean that an inadmissible arriving alien has no due-process rights, but "rather, the applicable statutory process shapes [his] procedural due-process rights." *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020) (concluding petitioner, detained under 8 U.S.C. § 1225(b)(2)(A), "has no statutory right to release or a bond hearing" and thus "has no due-process right to the relief requested.").

In *Zadvydas*, the Supreme Court held that, for "aliens who were admitted to the United States but subsequently ordered removed," Section 1231(a)(6) contains an implicit "reasonable time" limitation on detention—an alien may be detained beyond the ninety-day "removal period" only for such time as is reasonably necessary to secure the alien's removal, and detention may not continue if removal is "no longer reasonably foreseeable." 533 U.S. at 682, 690, 699. The Court read that implicit limitation into Section 1231 under the canon of constitutional avoidance because "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," *id.* at 682, 689-90, and "post-removal-period detention, ***unlike detention pending a determination of removability*** . . . has no obvious termination point," *id.*

---

[4] The *Sierra* court used the term "excludable alien" rather than "inadmissible arriving alien" or "applicant for admission," consistent with the statutory designations that existed at the time the petitioner in that case came to the United States. 258 F.3d at 1215 n.1, 1216 n.2; *see also Chi Thon Ngo v. INS*, 192 F.3d 390, 393-94 & n.4 (3d Cir. 1999) (explaining terminology changes in 1996 amendments to Immigration and Naturalization Act).

at 697 (emphasis added).[5]

In *Jennings*, the Supreme Court addressed detention pending a determination of removability and held that, unlike Section 1231, Section 1225(b) does *not* impose an implicit statutory limitation on the permissible length of detention while removal proceedings are ongoing. 583 U.S. 281. Nor does the statute implicitly give detained aliens the right to periodic bond hearings during the course of their detention. *Id.* 312; *see also id.* at 297 ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings."). The Court again pointed out that detention under Section 1225(b) has a definite termination point—the conclusion of certain proceedings. *Id.* at 297, 299. That section "mandate[s] detention of aliens **throughout the completion** of applicable proceedings." *Id.* at 302 (emphasis added). The "applicable proceedings" under Section 1225(b)(2) are the removal proceedings. *Id.* at 297, 299. " Until that [end] point, however, nothing in the statutory text imposes any limit on the length of detention." *Id.* at 297. "By contrast, Congress left the permissible length of detention under § 1231(a)(6) unclear." *Id.* at 299. Because Section 1225(b) "mandate[s] detention until a certain point and authorize[s] release prior to that point only under limited circumstances," it cannot reasonably be read to impose a limit on the

---

[5] In *Clark v. Martinez,* the Supreme Court clarified that the "reasonable time" limitation recognized in *Zadvydas* also applies to arriving aliens "inadmissible under [§] 1182" who become subject to a final order of removal and are then detained under Section 1231, even though "the constitutional concerns that influenced our statutory construction in *Zadvydas* are not present for aliens . . . who have not been admitted to the United States." 543 U.S. 371, 377-86 (2005). The Court reasoned that the same statutory text must be given the same meaning in all cases, even if the constitutional problems that dictated the construction in *Zadvydas* only pertain to a subset of the aliens who may be detained under the statute. *Id.*

length of detention prior to the conclusion of removal proceedings. *Id.* at 297-303.[6] The Court in *Jennings* did not address the constitutional question of whether the Due Process Clause imposes some constraint on the length of mandatory detention under Section 1225(b), but it did note that certain aliens—namely, those who have not effected entry into the United States—"may not be entitled to [relief] as a constitutional matter." *Id.* at 312-13 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953)).

Since *Jennings*, courts have "sharply disagree[d] about the reach of the Due Process Clause as applied to arriving aliens." *Gonzalez Aguilar*, 448 F. Supp. 3d at 1212. "[T]he Supreme Court has not addressed the viability of constitutional due process challenges to the length of mandatory immigration detention" under Section 1225(b) or Section 1226(c), "the circuits are split on the issue," and district courts "have also reached disparate conclusions." *Alves v. DOJ*, No. EP-25-CV-306-KC, 2025 WL 2629763, at *3 to *4 (W.D. Tex. Sept. 12, 2025); *see also Black v. Almodovar*, 156 F.4th 171, 173-4 (2d Cir. 2025) (Nardini, J., dissenting from denial of rehearing en banc) (describing the "intercircuit incoherence" regarding what process is due aliens subject to mandatory detention during removal proceedings as "more than the usual circuit split,"

---

[6] The Supreme Court in *Jennings* also held "1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Id.* at 305-06. The Court explained that Section "1226(c) is even clearer" than Section 1225(b). *Id.* at 303. It "does not on its face limit the length of the detention it authorizes," like Section 1225(b). *Id.* at 303. "In fact, by allowing aliens to be released 'only if' the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute." *Id.*

and concluding the "all-over-the-map holdings" are "a circuit splat" that "only the Supreme Court can clean up").

Some courts have held that, at some point, due process requires a noncitizen subject to prolonged detention under Section 1225(b) be given an individualized bond hearing before an immigration judge, or some other form of individualized review of eligibility for release beyond the opportunity to request discretionary parole under Section 1182(d)(5). *E.g.*, *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825-26 (W.D. Pa. 2025); *Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 848-51 & n.12 (E.D. Va. 2020); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772-73 (S.D. Cal. 2020); *Clerveaux v. Searls*, 397 F. Supp. 3d 299, 309-22 (W.D.N.Y. 2019); *Abdul-Samed v. Warden of the Golden State Annex Det. Facility*, No. 1:25-cv-00098-SAB-HC, 2025 WL 2099343, at *5 to *8 (E.D. Cal. July 25, 2025); *Arechiga v. Archambeault*, No. 2:23-cv-00600-CDS-VCF, 2023 WL 5207589, at *2 to *4 (D. Nev. Aug. 11, 2023).

But other courts have held that due process imposes no time limit or hearing requirement when an alien is subject to mandatory detention under Section 1225(b) while removal proceedings are pending. *E.g.*, *Gonzalez Aguilar*, 448 F. Supp. 3d at 1205-12; *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 675-79 (S.D. Tex. 2021); *Aslanturk v. Hott*, 459 F. Supp. 3d 681, 694 (E.D. Va. 2020); *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 647-50 (S.D.N.Y. 2018); *Leon Alcazar v. Cantu*, No. CV-24-03342-PHX-JAT (DMF), 2025 WL 2548698, at *14 (D. Ariz. June 5, 2025) (R. & R.), *adopted by* 2025 WL 2304357 (D. Ariz. Aug. 11, 2025); *Bonilla Espinoza v. Ceja*, No. 1:25-cv-01120-GPG, slip op. at 12-19 (D. Colo. May 21, 2025); *de la Rosa Espinoza v. Guadian*, No. 20-3126-JWL, 2020 WL 3452967, at *5 to *8 (D. Kan. June 24,

- 11 -

2020).[7]

The Tenth Circuit has not addressed this issue. But I agree with the persuasive authorities reasoning that, in light of *Jennings* and the Tenth Circuit's treatment of *Mezei* in pre-*Jennings* cases, procedural due process does not afford inadmissible arriving aliens subject to prolonged detention a right to release or a bond hearing prior to the conclusion of removal proceedings.[8] *See Gonzalez Aguilar*, 448 F. Supp. 3d at 1205-12; *de la Rosa Espinoza*, 2020 WL 3452967, at *5 to *8; *Bonilla Espinoza*, slip op. at 12-19. "[T]he Tenth Circuit has issued rulings addressing the *Mezei* principle, the most recent of which [*Sierra*] suggests *Mezei* still applies to procedural due process challenges within [this] Circuit," and "[t]here is no indication that the Tenth Circuit has overruled this precedent or limited it in a material way." *Bonilla Espinoza*, slip op. at 15-16. *Mezei* and *Sierra* "compel[] the Court to conclude that

---

[7] *See also infra* n.9; *Mwangi v. Terry*, 465 F. App'x 784, 787-88 (10th Cir. 2012) (detention was not indefinite and removal remained reasonably foreseeable for alien detained under Section 1226(a) for over three years during pendency of removal proceedings; "Although a precise end-date to his removal cannot be pinpointed, that is because his removal proceedings continue, not because the government cannot remove him.").

[8] While detention for civil or criminal allegations was understood to be limited by Due Process at the founding, Plaintiff has not shown the original understanding of how the Due Process Clause would apply in the context of this case, i.e., to an inadmissible arriving alien who "has the keys in his pocket" and can end his detention immediately by voluntarily returning to his home country. *Banyee*, 115 F.4th at 933 (quoting *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999)); *see Thuraissigiam*, 591 U.S. at 123-24 (U.S. and England "had nothing like modern immigration restrictions" in late 1700s and early 1800s); *INS v. St. Cyr*, 533 U.S. 289, 305 (2001) (first statute regulating immigration enacted in 1875); *Demore*, 538 U.S. at 522 ("[T]his Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens.").

- 12 -

Petitioner, as an applicant for admission, is entitled only to the process Congress has conferred on him by statute." *Id.* at 17. And under *Jennings*, the procedures authorized by Section 1225(b) do not provide for bond hearings or place a time limit on detention while removal proceedings are pending. *See, e.g.*, *Gonzalez Aguilar*, 448 F. Supp. 3d at 1205-12; *de la Rosa Espinoza*, 2020 WL 3452967, at \*5 to \*8; *Bonilla Espinoza*, slip op. at 12-19. Petitioner here "does not and cannot argue that he is not receiving the process Congress has established for detainees in his circumstances," *Bonilla Espinoza*, slip op. at 17, as that process dictates that he be detained until his removal proceedings have concluded." 8 U.S.C. § 1225(b)(2)(A).[9]

---

[9] Even if Petitioner was detained under Section 1226(c), his detention would still be statutorily required until his removal proceedings end unless he is released for witness-protection purposes. *See supra* n.6; *see also Banyee v. Garland*, 115 F.4th 928, 931-34 (8th Cir. 2024) (applicable Supreme Court authorities set forth "a bright-line rule" that "the government can detain an alien [under Section 1226(c)] for as long as deportation proceedings are still 'pending'" (emphasis omitted) (citing *Demore*, 538 U.S. at 527)); *Black*, 156 F.4th, at 182-84, 186-88 (Menashi, J., dissenting from denial of rehearing en banc) ("The Eighth Circuit [in *Banyee*] has the better reading of the [Supreme Court] case law . . . . The Supreme Court was emphatic in *Jennings* that courts must respect the requirement of mandatory detention that Congress adopted in § 1226(c). . . . Congress knows how to write a civil detention statute that provides for bond hearings. But it decided not to include such a provision in § 1226(c). . . ."); *Wekesa v. U.S. Att'y*, No. 22-10260, 2022 WL 17175818, at \*1 (5th Cir. Nov. 22, 2022) (due process did not require individualized bond hearing where petitioner was subject to mandatory detention under Section 1226(c)); *Utoliti v. Ceja*, No. 25-cv-00418-GPG-CYC, 2025 WL 2418598, at \*5 (D. Colo. May 29, 2025) (detention under Section 1226(c) comported with due process where "removal proceedings are ongoing, and Petitioner does not allege that Respondents have engaged in any dilatory conduct that has delayed those proceedings"); *Aguayo v. Martinez*, No. 1:20-cv-00825-DDD-KMT, 2020 WL 2395638, at \*4 (D. Colo. May 12, 2020) ("'detention during removal proceedings'—even longer-than-average detention—'is a constitutionally permissible part of that process' so long as there is no evidence that the government

### III. Substantive Due Process

The fact that inadmissible arriving aliens have no liberty interest in procedural due process beyond the statutory procedures afforded by Congress does not foreclose a substantive-due-process claim. *Sierra*, 258 F.3d at 1218 n.3. A noncitizen's substantive due-process rights may be violated if immigration detention becomes punitive. *See, e.g.*, *Gisbert v. U.S. Att'y Gen.*, 988 F.2d 1437, 1441-42 (5th Cir. 1993), *amended by* 997 F.2d 1122 (5th Cir. 1993); *Banyee*, 115 F.4th at 934; *Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981) ("[A]n excluded alien in physical custody within the United States may not be 'punished' without being accorded the substantive . . . due process guarantees of the Fifth Amendment."). But "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." *United States v. Salerno*, 481 U.S. 739, 746 (1987). A restriction on liberty is punitive rather than regulatory if (a) the government intends to impose punishment, or (b) the restriction is not "rationally related to a legitimate nonpunitive governmental purpose" or "appear[s] excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015); *Salerno*, 481 U.S. at 747.

Neither of those is true here. Petitioner provides no evidence or argument of intent to punish on the part of the Government. He argues instead his detention has "no endpoint," "DHS . . . intends to keep [Petitioner] imprisoned indefinitely," and "any alleged concerns raised by

---

is[] improperly or arbitrarily delaying removal" (quoting *Demore*, 538 U.S. at 531)); *Keo v. Warden of the Mesa Verde Ice Processing Ctr.*, No. 1:24-cv-00919-HBK (HC), 2025 WL 1029392, at *5 to *8 (E.D. Cal. Apr. 7, 2025) (following *Banyee*); *Rimtobaye v. Castro*, No. SA-23-CV-1529-FB (HJB), 2024 WL 5375786, at *2 to *3 (W.D. Tex. Oct. 29, 2024) (R. & R.) (same), *adopted by* 2025 WL 377722 (W.D. Tex. Jan. 31, 2025).

Respondents about flight risk or danger are ameliorated through the imposition of minimal supervision requirements that do not require [Petitioner's] indefinite detention." Doc. 14 at 2, 6, 9; Doc. 2 at 9. This is insufficient.

Detention alone does not mean the Government imposes punishment. *Salerno*, 481 U.S. at 746; *see also Gisbert*, 988 F.3d at 1442 n.8 ("detention pending removal and stemming from exclusion proceedings is not intended as punishment"); *Demore*, 538 U.S. at 526 (the Supreme Court has a "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings"); *Rodriguez-Fernandez*, 654 F.2d at 1387, 1389 ("[E]xcludable and deportable aliens [may be detained] while their cases are considered . . . ."; "[D]etention is permissible during proceedings to determine eligibility to enter . . . .").

Petitioner's current detention has an endpoint—when his removal proceedings conclude. *See Jennings*, 583 U.S. at 299 (Section 1225(b)(2)(A) "provide[s] for detention for a specified period of time. . . . until removal proceedings have concluded"); *see also id.* at 304 ("In *Demore* . . . [we] point[ed] out that detention under § 1226(c) has 'a definite termination point': the conclusion of removal proceedings."). His detention is not "indefinite and potentially permanent" like that at issue in *Zadvydas*. *See Banyee*, 115 F.4th at 932; *see also Utoliti*, 2025 WL 2418598, at *6 ("Detaining non-citizens during ongoing immigration proceedings serves a valid immigration purpose, while detaining functionally non-deportable noncitizens when there are no more immigration proceedings to be had does not necessarily do so."); *cf. Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004) ("[F]or now, [the petitioner's twenty-six-month] detention [under Section 1231] is clearly neither indefinite nor potentially permanent like the detention held

improper in *Zadvydas*; it is, rather, directly associated with a judicial review process that has a definite . . . termination point, and, thus, is more akin to detention [under Section 1226(c)] during the administrative review process, which was upheld in *Demore* . . . ."); *Castaneda v. Perry*, 95 F.4th 750, 757 (4th Cir. 2024) (petitioner detained under Section 1231 during pendency of withholding-only Convention Against Torture proceedings was not in same "removable-but-unremovable limbo" at issue in *Zadvydas*, and due process did not require bond hearing after 4.5-year detention). Indeed, Petitioner ultimately acknowledges the detention is not potentially permanent—"[a]ll this amounts to the fact that his detention will definitely terminate at some point"—and contests "it is unknown when [his] immigration case will reach a final resolution." Doc. 14 at 6.

As for Petitioner's "flight risk or danger" arguments, simply to "facilitate deportation" is a rational, nonpunitive purpose for detention. *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring). But "[w]ere there to be an unreasonable delay by the [Government] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation . . . but to incarcerate for other reasons." *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring); *Bonilla Espinoza*, slip op. at 24 ("*Demore* generally validated detentions during the pendency of ongoing immigration proceedings and Justice Kennedy's concurrence was clear that it is arbitrary government delay in moving proceedings along that potentially triggers a due process problem."). It is unlikely, however, that a petitioner can satisfy this standard absent evidence of government wrongdoing in connection with the removal proceedings, such as actions that unreasonably prolong the removal proceeding or actions taken in bad faith. Where removal proceedings are delayed solely by a party's good faith exercise of its procedural remedies—whether by the petitioner or the

Government—continued detention is unlikely to trigger due process concerns in most cases because continued detention until completion of the removal proceedings still serves the purpose of the statute. *See Misquitta v. Warden Pine Prairie ICE Processing Ctr.*, 353 F. Supp. 3d 518, 526-27 (W.D. La. 2018) (ten-month mandatory detention under Section 1226(c) without bond hearing was not so unreasonable or arbitrary as to violate due process where record did "not reflect any unusual delays considering the progress of the case" and there was "no evidence in the record that the government has acted in bad faith or otherwise unreasonably delayed [the] removal proceeding"); *accord Banyee*, 115 F.4th at 931, 934 ("back-and-forth rulings, plus general administrative backlogs, [which] were to blame for [the petitioner's] lengthy [year-long] detention" did not "turn otherwise legal detention into unconstitutional punishment").

Petitioner here has not demonstrated that there have been unreasonable or improper delays in resolving his case in immigration court. Petitioner made his initial appearance within two days of submitting an application for cancellation of removal. He had his individual hearing approximately two months later, at which time the Immigration Judge ruled on his application. About a month later, Petitioner appealed. The briefing deadline for the pending appeal recently ended.

There is nothing in the record to suggest the Government unreasonably or improperly delayed this process. Indeed, Petitioner's decision to pursue the process the Government has established for him to challenge the Government's removal decision is not the Government's fault. Nor is there anything in the record to suggest that Petitioner's continued detention is not for the legitimate purpose of facilitating his deportation, and I do not find that the length of his detention has become so prolonged as to constitute punishment. *See, e.g.*, *Gisbert*, 988 at 1440, 1442

(fact and duration of aliens' continued detention for over two years did not constitute punishment); *Martinez v. Ceja*, 760 F. Supp. 3d 1188, 1197-99 (D. Colo. 2024) (twenty-one-month detention under Section 1226(c) due to "resolution of multiple appeals to the BIA" did not violate substantive due process); *Gonzalez Aguilar v. McAleenan*, No. 19-cv-0412 WJ/SMV, 2019 WL 5864821, at *11 (D.N.M. Nov. 8, 2019) (R. & R.) (petitioner not likely to succeed on substantive-due-process claim where continued detention under Section 1225(b) after twenty-seven months was not indefinite and "will end when her removal proceedings end"), *adopted sub nom. Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202; *Rodriguez Figueroa v. Garland*, 535 F. Supp. 3d 122, 127-28 (W.D.N.Y. 2021) (over thirty-two-month detention under Section 1225(b) did not violate substantive due process); *Bonilla Espinoza*, slip op. at 23 (petitioner appeared for merits hearing "roughly 11 months after entering ICE custody," and any delays were not attributable to "arbitrary government conduct").

Petitioner has not demonstrated that he is likely to succeed on the merits of his habeas application on the basis that his detention has become punitive or unreasonably prolonged in violation of substantive due process.

Because Petitioner has not shown he is likely to succeed on the merits of his claims, his motion cannot be granted, and I need not consider the other preliminary-injunction factors. *Colorado v. EPA*, 989 F.3d 874, 890 (10th Cir. 2021) ("When the failure to satisfy one factor is dispositive, a court need not consider the other factors."); *Petrella v. Brownback*, 787 F.3d 1242, 1257 (10th Cir. 2015) ("Because we agree with the district court that plaintiffs are unlikely to prevail on the merits, we need not address the remaining preliminary injunction factors.").

## CONCLUSION

It is **ORDERED** that:

Petitioner Earlin Orande Ahinsha Richards' Motion for Temporary Restraining Order, construed as a motion for preliminary injunction, **Doc. 2**, is **DENIED**; and

For the reasons discussed above, "it appears from [Petitioner's habeas] application that [he] is not entitled" to the writ. 28 U.S.C. § 2243. Accordingly, on or before **January 6, 2026**, Petitioner must **SHOW CAUSE** why his Petition, Doc. 1, should not be dismissed without prejudice. On or before **January 20, 2026**, the Government may respond to Petitioner's submission.

DATED: December 5, 2025        BY THE COURT:

Daniel D. Domenico
United States District Judge